## Forster *against* M'Divit.

As to land which has been once improved and cultivated, abandonment may be matter of law to be decided by the court, or of fact, to be determined by the jury; but when the facts, with respect to it, are doubtful, it must be referred to the jury.

The improvement and occupation of part of a tract of land by the owner of an adjoining survey which interferes with it, will not exempt the residue of the tract from assessment and sale for taxes as unseated land.

ERROR to the Common Pleas of *Huntingdon* county.

This was an action of ejectment by the executors of William Forster, deceased, against William M'Divit, for 150 acres of land. The points argued, in this court, are fully stated in the opinion.

*I. Fisher* and *Blanchard*, for plaintiffs in error, argued that any improvement and cultivation upon the land, whether by the owner of an adjoining survey or not, exempts the land from sale as unseated; and on this point cited 1 *Watts* 504; 4 *Watts* 366; 7 *Watts* 37; 3 *Watts & Serg.* 238.

*Wilson* and *Miles*, for defendants in error, whom the court declined to hear.

The opinion of the Court was delivered by

KENNEDY, J.—The first error assigned is an exception to the answer given by the court below to the 11th point submitted by the plaintiffs. By this point the court were requested to instruct the jury, "if they believed that the small field at the east end of the Joseph Long survey was cleared and enclosed as far back as 1812, and continued in grain and grass up to 1817 or 1818, and that a portion of the fence remained round the field, and grass grew in it up to 1823, upon which the cattle of Mr Livingston as well as others fed, and that Livingston never gave any notice, either to Wilson or the assessors, that he had abandoned the field, and that the field was again cultivated in 1824, then there was no abandonment of the field, and the Long tract, on which it was, could not be treated as unseated land in and during the years 1820, 1821, 1822, 1823 and 1824." The court, however, refused to give this instruction to the jury, but told them, "there was no time fixed by law that land should be unoccupied, to authorize its being taxed as unseated. But if they believed that Thomas Wilson, who claimed to be the owner of the land at the time, had abandoned his settlement, improvement and cultivation of it, and it was not

[Forster v. M'Divit.]

resided on or cultivated by any one during the time that any of
the taxes were assessed, the sale to Reed, on account thereof,
would be a valid one.   The Supreme Court had, without fixing
any time, said that land, although once seated, if abandoned by
suffering the fields to grow up and the fences to rot down, might
be assessed, taxed and sold as unseated.   The jury would observe
it was not abandoning the title, but abandoning the occupancy and
cultivation that authorized the assessment of a tract as unseated.
If Livingston and Stewart (witnesses) were believed, the small
field was not cultivated or occupied from 1817, when Livingston,
who had occupied it under an agreement made with Wilson, from
1812, excluded it from his own land, with which he had enclosed
it by a fence around the whole, by making a fence on the line
between it and his own, until 1823, when Stewart cleared it out
again for cultivation; and that they had heard the testimony of
the different witnesses as to the situation of the field during that
period—how the fence around it was suffered to go down, and the
cattle of the neighbourhood, which ran at large, to feed upon it,
before Stewart took possession of it in 1825; that they had seen
the assessments from 1812 to 1826, on the unseated land list, of
which Thomas Wilson had some knowledge, for he had redeemed
the land at a previous sale for taxes.   Did, then, the evidence
satisfy them that Wilson had abandoned the occupation and culti-
vation of the field when any of the taxes were assessed for which
the land was sold to Reed?   If it did, and they were satisfied, on
the principles that the court had before stated, that the residence
in the house did not give it the character of a seated tract, the
sale to Reed was valid, and M'Divit, who held under it, was en-
titled to their verdict.   But if they were satisfied that Wilson had
not abandoned the possession, or that there was a residence on or cul-
tivation of any part of the land during the time that the taxes were
assessed for which it was sold to Reed, the sale would not convey
any title to Reed, and the plaintiffs would be entitled to recover."

This answer of the court we consider perfectly correct through-
out.   Whether the ordinary use and occupation of the small field,
which, according to the evidence, had been neglected and suffered
to commence its return to a wild state, to say the least of it, from
the year 1817 to that of 1823 or 1824, had been abandoned or not
by Wilson and his tenants, was a question of fact depending so
much upon the intention of Wilson, as to make it not only proper,
but necessary for the court to submit it to the jury, to be deter-
mined by them as a question of fact.   This the court did; and, in
doing so, we also think that the instruction given by them to the
jury, in relation to the question, was not only appropriate, but
well adapted to assist and enlighten their minds on the subject.
Doubtless, cases may occur where the facts may be such as to
make it the duty of the court to determine the question of aban-
donment, or of the occupation and possession of the land, as one of
law; as, for instance, where the lapse of time has been so great

[Forster v. M'Divit.]

that the land has assumed, in a great degree, its former natural state, and become unfit for cultivation or the uses of husbandry, without being cleared and fenced anew; or the time of its neglect may be so short as to make it proper for the court to decide the question. But wherever the lapse of time and the circumstances attending it are such as to render the question in the least dubious, it must be left to the jury for their decision. The present case we consider of this last description, and therefore think that the court below did right in leaving the question of abandonment to the jury.

The second error assigned is also an exception to the answers given by the court to the sixth point submitted on the part of the plaintiffs. By it the court were requested to instruct the jury, " that if they believed that the surveys in the names of Clement Biddle and Philip Kinsey, respectively, were the lands called for in the warrant and survey of Joseph Long, as Mifflin's lands, the law then fixed and settled the lines of the Joseph Long survey to adjoin the lines of Biddle at the west end of the Joseph Long survey, if no marks or lines and corners were there to be found upon the ground at the west end of the Joseph Long survey, showing that the original survey of Joseph Long did not adjoin Biddle, and this without regard to the lines and corners on the other parts of the Long survey." To this the court replied, and told the jury, " if they believed that the surveys in the names, respectively, of Clement Biddle and Philip Kinsey, were the lands called for in the warrant and survey of Joseph Long, as Mifflin's lands, the law was as therein stated. But they would observe, that the warrant of Joseph Long called for adjoining lands of William Patterson and Mr Mifflin; that Kinsey and Biddle were admitted to be lands of Mifflin; and that the survey of Long adjoined Kinsey, on two corners, which was fulfilling the call of the warrant; and whether the line S. 75 W. from the hickory was extended to the Clement Biddle survey, was open for their consideration." The answer here given to the sixth point of the plaintiffs was quite as favourable to them as they had any reason to expect or right to require. From the nature of the thing, it cannot be supposed or believed, that by the call of the warrant for the lands of Mr Mifflin, it was intended that in its location it should be made to adjoin all the lands of Mr Mifflin, or every tract and survey which he held there under warrants in different names. The court were therefore perfectly correct in saying, that as the Joseph Long survey had been made to adjoin the Kinsey survey, one of the tracts admitted to be Mifflin's land, the call of the Joseph Long warrant, as also that of the survey made in pursuance of it, was fully met and answered. Had the Long warrant, or the survey alone, called for land of Mifflin surveyed under a warrant in the name of Clement Biddle, and the courses, distances and marks made on the ground of the Long survey had all been consistent

v. — 46　　　　　2 F

[Forster v. M'Divit.]

therewith, it would have been conclusive evidence that such was the actual location of the survey; or if the courses, distances and marks thereof on the ground had not been *inconsistent* with the call for the Biddle survey, it would have been powerful evidence, at least, if not conclusive, to show that it was so in fact as well as so intended. But neither seems to be the case; for the courses and distances of the Long survey did not correspond, altogether, with those of the Biddle survey, which were claimed by the plaintiffs to be their boundary on that quarter; and as to marks on the ground, none were to be found necessarily leading to the conclusion that the plaintiffs contended for; and as to the corners, they, according to the calls of the two surveys, appeared to be different. Under these circumstances, it would have been error in the court to have instructed the jury as requested by the plaintiffs. In truth, they could not have done more to favour the plaintiffs than they did, by leaving it as a question of fact to the jury to be decided by them.

The third error assigned, which is the only remaining one, is also an exception to the answer given by the court to the seventh point submitted on behalf of the defendant. The court were requested by the defendant, in this point, to instruct the jury, " if they should believe from the evidence that the house, concerning which the witnesses had spoken, was within the lines of the James Long tract of land, yet if they were satisfied from the evidence that it was also within the lines of the Charles Green survey, and that the occupancy of the house was under Fee, the owner of that survey; and if they should believe from the evidence that the owner of the Joseph Long survey acquiesced in the possession of Fee, and did not intend to contest his right to the land thus adversely possessed by him, then the occupancy of the land by Fee and his tenants would not change the character of the residue of the Long tract, and make it a seated tract, if without such occupancy it would have been *unseated;* and that Fee's adverse occupancy under his independent survey made in pursuance of the Charles Green warrant would not render a sale for taxes of the Joseph Long survey illegal and void under the facts there stated." To this point the court responded in the affirmative, and referred to their general charge for more full instruction on the question raised by it. In their general charge, the court told the jury, that " the law had been settled that the possession on an adjoining tract, or even on an interfering tract distinctly separate, would not avoid a sale of another tract as unseated, though the claim of the possessor may interfere with the adjoining unseated land, but the purchaser of the unseated tract may hold what is without the boundaries of the land so in possession of another. If, then, the evidence satisfied them that Col. Fee, who purchased from Charles Green in 1810 the land surveyed on the Charles Green warrant, which includes the little house, had this house occupied as a part

[Forster v. M'Divit.]

of his purchase during the years the taxes were assessed on which it was sold to Reed, although it might be on the Long survey, with which the Charles Green survey interferes, and the house situated within the interference, such holding by Fee, under his purchase, which was an independent and adverse title, would not affect the sale to Reed for taxes, for the residue of the Long survey." The instruction of the court below to the jury, on this point, appears to be perfectly unexceptionable. We have had the same point before us, a few days since, in the case of *Mitchell* v. *Bratton*, (*post*), where it is discussed, and the opinion of this court given approving and sustaining the doctrine laid down by the court below, in this case, in relation to it. It is therefore unnecessary to go further into the matter here.

Judgment affirmed.