## HATHAWAY *against* HEMINGWAY.

*Hartford,*
July, 1850.

Hathaway
*v.*
Hemingway.

When the burden of proving any matter in issue, is, by the pleadings, thrown upon the plaintiff, he must generally introduce, in the first instance, all the evidence upon which he relies; and cannot, after going into part of his case, reserve the residue of his evidence for a subsequent opportunity.

The same general rule is applicable to the defence. After the plaintiff has introduced his evidence and rested, the defendant must bring forward all the evidence on which he relies to meet the plaintiff's claim; and cannot, after introducing a part, reserve the residue for a future occasion.

Therefore, where the plaintiff in ejectment, claimed title to the demanded premises, by virtue of an execution in her favour, levied thereon, and had introduced her evidence in support of that title; to this claim the defendant set up a two-fold defence—first, that the plaintiff had acquired no title, by the levy of her execution, because the property had previously been taken, by virtue of an execution in favour of *R;* and secondly, if she had acquired any title under her execution, she had subsequently conveyed it away by deed; the defendant introduced evidence in relation to the first ground of defence alone, and there rested; the plaintiff then introduced evidence to impeach the title of *R;* the defendant, after giving evidence in support of *R's* title, resorted to the other ground of defence, and offered evidence to show that the plaintiff had parted with her title; it was held, that this was evidence in chief, and came too late.

Though such is the general rule, it is not, in all cases, an inflexible one; there being a discretionary power in the court, to relax the operation of it, when great injustice would be done, by a strict adherence to it.

Where the judgment in an action on a promissory note, on which there was a payment endorsed, was, by mistake, rendered for the amount of the note apparent on its face, without deducting the payment endorsed; it was held, that this did not invalidate the judgment, and render the proceedings under an execution issued thereon, void; but relief must be afforded to the party injured in some other mode; the court being inclined to think that his appropriate remedy was by an application to a court of chancery.

Where the officer levied such execution upon two pieces of land,— *White-acre* and *Black-acre*—at the same time, and had them both set off together, describing, in his return, *White-acre* first, and then *Black-acre ;* and it was claimed, that the creditor's debt, according to the appraisement of the land, was fully satisfied by *White-acre*, and that, consequently, no title to *Black-acre* was acquired, by the levy upon that piece; it was held, that the mere prior description of one of the pieces in the officer's return, did not make any difference in the legal effect of the execution.

Where the land levied upon was appraised at 25 dollars *per* acre, and was set off, by mistake, as containing just 26 acres, when it contained, in fact, 26 acres and 18 rods; it was held, that the appropriate remedy was by an application in chancery, on which that court might, by a proper decree, direct the creditor to relinquish so much of the land as would equal in value the excess taken.

*Hartford,*
July, 1850.

Hathaway
*v.*
Hemingway.

THIS was an action of ejectment, to recover possession of a certain tract of land situated in the town of *Suffield.*

On the trial of the cause to the jury, it was admitted, that the property originally belonged to one *Seth Granger*, and that the defendant was in possession.

The plaintiff claimed title, by virtue of the levy of an execution in her favour against *Granger;* and introduced the judgment and execution, with the officer's return thereon.

The defendant then introduced a judgment in favour of *Isaac C. Remington* and *Daniel G. Remington*, and sundry other judgments in favour of *Daniel Remington*, against *Granger*, and the executions which issued upon those judgments, and were levied upon the demanded premises, prior to the acquisition of any title or lien by the plaintiff, under which he claimed title, and there rested, without making any claim that the plaintiff had ever parted with the title, which she had acquired, by virtue of the levy of her execution.

The plaintiff then introduced much evidence to show, that the judgment in her favour was for a debt justly due to her, and that the judgments in favour of the *Remingtons* were not for any debts justly due to them, but were fraudulent and void as against the creditors of *Granger*, and there again rested.

The defendant then, on his part, produced much testimony to disprove this claim of the plaintiff, and at, or very near, the close of his evidence, claimed, that the plaintiff, after the levy of her execution, and before the commencement of the suit, had, by deed, conveyed all her interest in the premises to one *Henry Granger;* and, in support of the claim, offered in evidence a deed, purporting to convey the same.

To the admission of the deed, at that stage of the trial, the plaintiff objected, and claimed, that this, if evidence at all for the defendant, was evidence in chief, and should have been introduced as such on the trial. The court sustained the objection, and refused the admission of the deed.

It further appeared, on the trial, that the plaintiff brought her action before the county court for the county of *Hartford*, upon a promissory note, dated *January* 1st, 1835, for the sum of 1170 dollars, payable on demand, with interest, upon which note there was indorsed, *December* 28th, 1840, the

sum of 318 dollars, 71 cents, and, at the *March* term of said court, she recovered judgment for the sum of 1600 dollars, 58 cents, damages, and 9 dollars, 37 cents, costs of suit. She afterwards took out an execution upon that judgment, and caused it to be levied upon certain real estate of the debtor, in part satisfaction thereof, leaving a balance apparently due thereon, of 786 dollars, 37 cents.

She afterwards brought an action before the superior court for the county of *Hartford,* upon the judgment so obtained, to recover that balance, and at the *September* term of that court, recovered judgment against *Granger,* for the sum of 1134 dollars, 32 cents, damages, and 12 dollars, 23 cents, costs of suit. Upon this judgment she took out an execution, and caused it to be duly levied upon two tracts of land of the debtor, the one last described in the officer's return, was the one to recover possession of which the plaintiff brought her action.

The defendant claimed, that the first judgment was rendered for the whole amount apparently due upon the face of the note, without any deduction for the endorsement thereon; that by reason thereof, both the first and last judgments were too large; and that this was done with a design, on the part of the plaintiff, to cheat and defraud the creditors of *Granger;* and that if the endorsement had been deducted, the amount, which the plaintiff would have been entitled to recover, if any thing, would have been fully paid and satisfied, by the real estate taken upon the first execution, and the tract of land first described in the last execution; and that whether the omission was with a fraudulent design or not, on the part of the plaintiff, she, by reason of such omission, acquired no title to the demanded premises, by virtue of the levy of her execution, as against prior levying creditors: and he requested the court so to charge the jury.

But the court instructed them, that if the endorsement upon the note ought to have been deducted, and the plaintiff had omitted to do it, with intent to cheat and defraud the creditors of *Granger,* then the judgments and the levy upon the demanded premises, were null and void, and their verdict must be for the defendant. But if such omission arose merely from mistake and accident, and without any dishonest or fraudulent design, neither the judgments, nor the levy of the exe-

VOL. 20.                25

cution, were thereby rendered void or ineffectual ; but if any error had intervened, it must be corrected, if at all, in some other mode.

The defendant further claimed, and introduced evidence to prove, that the demanded premises, which were appraised at 25 dollars an acre, and set off upon the execution as containing 26 acres, did in fact contain 26 acres and 18 rods ; and that consequently, the levy of the plaintiff's execution upon the demanded premises, was thereby rendered void.

The plaintiff denied, that the premises contained more than 26 acres ; but if they did, the error, as claimed by the defendant, was so small, as to fall within the maxim, " *de minimis non curat lex ;*" and so the court instructed the jury.

They having returned a verdict in favour of the plaintiff, the defendant moved for a new trial ; and the questions of law were reserved for the advice of this court.

*Toucey* and *Chapman,* in support of the motion, contended, 1. That the deed from the plaintiff to *Henry Granger,* was offered seasonably, and should have been admitted.

2. That the plaintiff's judgment is no evidence of debt between the parties to this suit, and is not receivable to prove the facts upon the supposed existence of which it is founded. 1 *Stark. Ev.* 183 to 190.   *Fowler* v. *Savage* & al. 3 *Conn. R.* 90. 96.   *Sturges* v. *Beach* & al. 1 *Conn. R.* 507.   1 *Greenl. Ev.* 629. 644.   *Swift's Ev.* 17, 18.   *Reed* v. *Davis,* 5 *Pick.* 388.   *Pierce* v. *Partridge,* 3 *Met.* 44.   *Alexander* v. *Gould,* 1 *Mass. R.* 165.

3. That if receivable for such a purpose, it is liable to be rebutted.

4. That the plaintiff's levy is void, because the officer has set off to him 18 rods of land more than was necessary to satisfy his entire demand.   *Beach* v. *Walker,* 6 *Conn. R.* 190.   *Huntington* v. *Winchell,* 8 *Conn. R.* 45.   *Spencer* v. *Champion,* 9 *Conn. R.* 536.

*Hungerford* and *T. C. Perkins,* contra, contended, 1. That the deed offered in evidence by the defendant, was evidence in chief, and should have been so introduced, if at all ; and if not, the court had *discretionary* authority to reject it.

2 *Greenl. Ev.* 411. § 429. (3d ed.) *Borland* v. *Mayo*, 8 *Ala. R.* 104. S. C. 1 *Sup. U. S. Dig.* 463. pl. 10.

<div style="float:right">*Hartford,*<br>*July, 1850.*<br><br>Hathaway<br>*v.*<br>Hemingway</div>

2. That in respect to the excess in quantity of the land taken beyond that allowed upon the execution, it did not avoid the levy. In the first place, it falls within the maxim *de minimis non curat lex. Huntington* v. *Winchell*, 8 *Conn. R.* 45. *Spencer* v. *Champion*, 9 *Conn. R.* 536. Secondly, the party injured is not remediless; for if the excess was taken by mistake, he may have relief in chancery; if fraudulently, he may sustain an action at law. Fraud, however, will not be presumed; and none is shown in this case.

3. That the judgment in favour of Mrs. *Hathaway* could not, unless fraudulent, be impeached, in the manner attempted. 1 *Sw. Dig.* 754. *Hauer's* appeal, 5 *Watts & Serg.* 473. *Hazelett* v. *Ford*, 10 *Watts*, 101. *White* v. *Albertson*, 3 *Dev.* 241. *Williams* v. *Woodhouse*, 3 *Dev.* 257. *Perryman* v. *The State*, 8 *Mis.* 208. *Banister* v. *Higginson*, 3 *Shep.* 73. *Obert* v. *Hammel*, 3 *Harr.* 73. *Baird* v. *Campbell*, 4 *Watts & Serg.* 191. *Childs* v. *Ham,* 10 *Shep.* 74. *Lowber & Wilmer's* appeal, 8 *Watts & Serg.* 387. *Evans* v. *Adams*, 3 *Green*, 373. *Swiggart* v. *Harber*, 4 *Scam.* 364. See also 2 *Sup. U. S. Dig.* 230. *Adams* & al. v. *Balch*, 5 *Greenl.* 188.

WAITE, J. The first question, presented upon the motion, is, whether the court below erred in refusing to admit in evidence the deed offered by the defendant, in that stage of the trial, in which it was presented.

The rule upon this subject is a familiar one. When, by the pleadings, the burden of proving any matter in issue is thrown upon the plaintiff, he must, in the first instance, introduce all the evidence upon which he relies to establish his claim. He cannot, as said by Lord *Ellenborough,* go into half his case, and reserve the remainder. *Rees* v. *Smith* & al. 2 *Stark. Ca.* 31. *Rex* v. *Beezley*, 4 *Car. & Pa.* 220. (19 *E. C. L.* 353.) *Brayden* v. *Goulman*, 1 *Monroe*, 115. *Rex* v. *Stimpson*, 2 *Car. & Pa.* 415. (12 *E. C. L.* 197.) *Knapp* v. *Haskell*, 4 *Carr & Pa.* 590. (19 *E. C. L.* 539.)

The same rule applies to the defence. After the plaintiff has closed his testimony, the defendant must then bring forward all the evidence upon which he relies, to meet the claim

*Hartford,*
July, 1850.

Hathaway
*v.*
Hemingway.

on the part of the plaintiff.   He cannot introduce a part, and reserve the residue for some future occasion.

After he has rested, neither party can, as a matter of right, introduce any farther testimony which may properly be considered testimony in chief.

What was the situation of the case, when the deed was offered ?   The plaintiff claimed title to the demanded premises, by virtue of an execution in his favour, levied upon the property, and introduced his evidence in support of that title.

The defence to this claim was two-fold : first, that no title had been acquired, by the plaintiff, under her execution, because the property had been previously taken by the *Remingtons*, by virtue of executions in their favour ; and in the second place, if she had acquired any title under her execution, she had subsequently conveyed it away, by deed.

The defendant was at liberty to place his defence upon either or both these grounds, at his pleasure.   He chose, however, to produce evidence only in relation to the title acquired by the *Remingtons*, under whom he claimed a right to hold the possession.

The plaintiff then introduced evidence to impeach the title acquired by the *Remingtons*, and to show that it was fraudulent and void, as against the creditors of *Granger*, the former owner.   The defendant then, after introducing evidence in support of the *Remington* title, attempted, for the first time, to resort to the other ground of defence, and show that the plaintiff had parted with her title to the demanded premises. This was clearly testimony in chief, and came too late.   The decision of the court below was in conformity with the rule.

But this rule is not, in all cases, an inflexible one.   There is, and of necessity  must be, a discretionary power, vested in the court before which a trial is had, to relax the operation of the rule, when great injustice will be done, by a strict adherence to it.   If a party, by mere mistake or inadvertence, omit to introduce a piece of testimony, constituting an essential link in his chain of evidence, and does not discover the mistake until after he has closed his testimony, the court, in its discretion, will, rather than that his cause should be sacrificed, permit him to supply the omission ; taking care, how-

ever, to see that the adverse party is not prejudiced, by the relaxation of the rule.

This discretionary power, however, is to be exercised with great caution. While the rule may be departed from, for the sake of preventing great and manifest injustice, it ought not to be so frequently disregarded as to render it a rule in name, and not in reality.

We discover nothing in the present case, calling for the exercise of this discretionary power. It is not stated, that the omission to offer the deed, at an earlier period, was occasioned by any mistake or inadvertence of the defendant or his counsel.

The defendant did not claim title under that deed, but under the executions in favour of the *Remingtons ;* and the effect of setting up that deed, might only have been to turn the plaintiff, or her grantee, round, to bring another suit, for the purpose of trying the precise question involved in the present case, and that is, whether the plaintiff or the *Remingtons* had acquired the better title under their executions.

2. The next enquiry is, as to the effect upon the judgments, by the omission to apply the endorsement upon the note, in reduction of the amount. The jury were told, that if this were done, with a fraudulent design on the part of the plaintiff, the judgments would be void. The jury having returned a verdict in her favour, the charge of fraud must, therefore, be considered as negatived.

The case then must stand upon the ground of a mere mistake in computing the amount due upon the note. If by mistake, that amount is made too large, will it vitiate the judgment, and render the whole void? We think not. Relief, in such case, must be afforded in some other form, than by setting aside the whole judgment, and all proceedings under the execution issuing upon that judgment.

In the present case, the defendant claims title from the *Remingtons.* The plaintiff's title was acquired subsequently to theirs, and the jury, by returning a verdict in her favour, must have proceeded upon the ground claimed by her on the trial, that the judgments in favour of the *Remingtons* were fraudulent and void as to the creditors of *Granger.*

Under these ciscumstances, the defendant can be considered as standing upon no higher ground than that of a *bona*

*Hartford,*
*July, 1 50.*

Hathaway
*v.*
Hemingway.

*fide* creditor of *Granger*, levying his execution upon his property, subsequent to the proceedings under that of the plaintiff. Now, if the plaintiff has actually, under colour of law, taken more land than sufficient to satisfy the whole debt due to her, she ought not in equity to retain the surplus, as against the creditors of *Granger*, especially if he be insolvent, and have no other means of satisfying their demands.

In such case, we are inclined to think the defendant's appropriate remedy is by an application to a court of chancery. That court possesses more extensive powers than a court of law, and can so direct its decree as to do justice to all parties in interest.

Had the land set off upon the first execution, been sufficient to satisfy the whole debt actually due to the plaintiff, we are not prepared to say, that the subsequent judgment and execution would not have been inoperative, as against the title acquired by the *Remingtons.*

But the difficulty here is, that after applying the first tract of land upon the plaintiff's first judgment, there was still a balance justly due to her; and in relation to the subsequent proceedings, a court of law has no power to separate the good from the bad. It must either hold the subsequent judgment and execution valid, or the whole void.

It is however insisted, that as the last execution was levied upon two pieces of land, and the one first described in the officer's endorsement, according to the appraisal of the freeholders, is sufficient to satisfy the balance justly due to the plaintiff, she acquired, as against the *Remingtons,* no legal title to the demanded premises, which is the tract secondly described in the endorsement.

There would be much force in this argument, did it appear from the endorsement of the officer, that he levied, in the first place, upon one of the pieces, and after having that appraised, and set off upon the execution, he levied upon the other piece, and set it off in like manner. In such case, if the plaintiff, at the time of the levy of the execution upon the last piece, had been fully paid, and her just debt satisfied, the defendant might well say, your title to the last tract of land shall not prevail against mine.

The difficulty, however, is, that the officer levied the last execution upon the two pieces of land, at one and the same

time, and caused them both together to be set off upon the execution. A court of law can no more say which of the two pieces the plaintiff, under such circumstances, shall retain, and which relinquish, than it could, were the two pieces but one entire tract. The mere circumstance that one of the pieces is first described in the officer's return, does not make any difference, or vary the legal effect of the execution.

3. The remaining inquiry relates to the quantity of land contained in the demanded premises. They were appraised at 25 dollars *per* acre, and were set off to the plaintiff upon her execution, as containing just 26 acres. It is now claimed, by the defendant, that the tract contains 26 acres and 18 rods, and consequently, she has, in fact, taken 18 rods more than she is entitled to.

On the trial, it was claimed, by the plaintiff, that the excess was so small as to fall within the maxim, " *de minimis non curat lex ;*" and the validity of that claim was recognized, by the court below.

We do not, however, deem it material to go into an enquiry, whether the claim can be vindicated, upon that ground ; because we are satisfied, that, for other reasons, a new trial for this cause should not be granted.

It is not claimed, that either the plaintiff, or the officer, committed any intentional wrong, in setting off the tract, as containing just 26 acres. There is no error apparent upon the face of the officer's return. The case, therefore, must be considered as standing upon the mere ground of a mistake in fact, in relation to the quantity of land contained in the described tract.

The question, therefore, in this aspect, becomes very similar, in its effect, to the one last considered ; and the appropriate remedy, if any, is also in a court of chancery. Were the magnitude of the error sufficient to justify the interference of that court, it might, by a proper decree, direct the plaintiff to relinquish as much of the land as would equal in value the amount of the excess taken.

A new trial must therefore be denied.

In this opinion the other Judges concurred.

**New trial not to be granted.**