## MARY A. PAGE v. ASA JEWETT.

Where several suits are pending against the same person whose property is attached upon them all, if the first attaching creditor intentionally take judgment, though by agreement with his debtor, on claims which were not recoverable under any count in his declaration, that will dissolve his attachment as against the subsequent attaching creditors.

Where such first attaching creditor, under such an agreement, took judgment against his debtor, for goods sold and delivered after the date of his writ and of the attachments, to the amount of $37.88, that will dissolve his attachment as against subsequent attaching creditors.

Where such first attaching creditor brought his suit upon an account against his debtor upon which were credits to an amount exceeding $300, at the date of the writ, and afterwards made an agreement with his debtor by which a large part of such credits were applied to the payment of a claim which he had purchased against his debtor after the attachments were made and took judgment for all the balance, and made an effort to collect the same, this will dissolve his attachment as against subsequent attaching creditors.

Where the first of several attaching creditors intentionally takes judgment against his debtor for a sum clearly not due, or for claims not recoverable under his declaration, or for claims not intended to be covered by his writ, or included in his suit at the time of the attachments, it will dissolve his attachment as to subsequent attaching creditors.

Any proper amendment may be made to the plaintiff's declaration which does not change the form or the cause of action, without affecting his attachment.

The rights of subsequent attaching creditors cannot be affected by agreements or admissions made by the debtor with a prior attaching creditor after the attachments are made.

If a prior attaching creditor, in consequence of mere mistake and inadvertence, unintentionally takes judgment for too large an amount, that will not vitiate his attachment as to subsequent attaching creditors.

Where a prior attaching creditor, in taking his judgment, does any act the direct tendency and legitimate results of which will be to injure the rights of a subsequent attaching creditor, and to diminish his security upon the debtor's property, to which he has fairly become entitled by his attachment, the law will pronounce such wrong act a fraud upon such subsequent attaching creditors, and visits that fraud with its ordinary penalty; that is, it makes the judgment into which the fraud enters, void as to all those injured or intended to be injured by it, unless it be made to appear affirmatively that such act was the result of accident or mistake, of mere inadvertence, and was not knowingly or intentionally done.

WRIT of entry. The case was tried by jury. Each party claimed under the levy of an execution against one John R. Jewett.

The attachment of the land in defendant's suit against said John, was made Aug. 30, 1859. The attachment in plaintiff's suit against John, was made Sept. 21, 1859. The question was whether there was any fraud or defect in the defendant's judgment or levy which rendered them void as against this plaintiff, his attachment being prior to her's. There were three counts in defendant's declaration against John; one for $500, money had and received, one for $500, goods sold, and one for $1150, a claim growing out of the estate of Nathaniel Jewett, the father of defendant and John. The *ad damnum* was $2000.

In that suit judgment was rendered in accordance with the following agreement:

### SUPREME JUDICIAL COURT.

STRAFFORD, ss.    May Term, A. D. 1860.

#### ASA JEWETT v. JOHN R. JEWETT.

The parties to this action agree that said plaintiff may take judgment against said defendant for the sum of twelve hundred and thirty-five

dollars and thirty-two cents ($1235.32) (as per notes and account filed herewith) debt or damage, and costs of suit taxed at thirteen dollars and eighty-three cents ($13.83.)

WILLIAM EMERY, Att'y for John R. Jewett.

ASA JEWETT.

| | | | | | |
|---|---|---|---|---|---|
| The notes filed and amounted, at the time of the judgment, to | | | | | $378 53 |
| The amount of the charges, on the account filed, appeared to be $780 36, but correctly computed, the amount was | | | | 769 36 | |
| Of that sum the items of "cash lent" amounted to | | | | 165 33 | |
| " | " | " | "paid" sundry persons, | 107 85 | |
| " | " | " | "use of horse" and "sawing," | 61 14 | |
| " | " | " | "interest on oxen," | 43 00 | |
| | | | | $377 32 | |
| " | " | " | goods sold, | 392 04 | |
| Of which $392 04 there was charged for goods sold after date of writ, the last charge being in April, 1860. | | | | 37 88 | |
| The costs of the suit were, | | | | | 13 83 |
| The costs of levying the execution were, | | | | | 22 63 |
| The execution was satisfied to the amount of, | | | | | 1012 37 |
| $650 of which was from other real estate. | | | | | |

The account was copied by defendant from his books after the attachment in this plaintiff's suit was made, and, as copied, contained items of credit before date of writ, amounting to $322 16.

When the account was filed at the time of the agreement for judgment, nearly all the items of credit were torn from the account and not filed, and the rest of the items of credit were erased.

Of the $322 16 credit, on defendant's books, the items of "cash" amounted to $174 56. Of this sum of $174 56, items amounting to $43 92 were received in 1856 and 1858, in payment of money lent, and charged as such in the account within a few days after it was lent.

In this case plaintiff claimed that defendant's judgment and levy were void; that his judgment was taken on the notes and account, and not on the third count, and for a larger sum than the amounts claimed in the first and second counts; that the amount due on the notes was less than the first count; that the items of credit had been applied in payment and could not be withdrawn or changed; that the charges in the account filed, amounting to $107.85, charged as paid (to sundry persons,) also $61.14 charged for "use of horse," and "sawing," also $43.00 charged for "interest on oxen," and $37.88 sold and charged after date of writ, could not be recovered under either of the counts in the declaration. The court ruled *pro forma* that nothing appeared which could be held, as a matter of law between these parties, to be a fraud or a defect in defendant's title, and plaintiff excepted.

Plaintiff's counsel were requested to state upon what questions of fact they desired the jury to pass, and the only question of fact suggested was whether in the agreement for judgment there was any *fraud in fact*; whether defendant took judgment for a larger amount than was due with any fraudulent intent as to other creditors or with knowledge that John had such intent. Upon this question the jury disagreed.

Defendant testified that, at the time of the agreement for judgment, it was agreed between himself and John's attorney that the credits on his books then removed and erased from the account, should go to pay his claim declared upon in his third count and an execution or judgment, or claim against John which he had bought of one Fox, about the time the agreement for judgment was made, and perhaps other claims which he did not remember.

The question of law raised by the plaintiff's exception to the ruling of the court was reserved.

*Wells & Eastman*, for plaintiff, cited and commented on *Laighton v. Lord*, 29 N. H. 237; *Willis v. Crooker*, 1 Pick. 204; *Fairfield v. Baldwin*, 12 Pick. 388; *Clark v. Foxcroft*, 7 Greenl. 348; *Downs v. Fuller*, 2 Met. 135; *Peirce v. Partridge*, 3 Met. 44; *Caswell v. Caswell*, 28 Maine 237; *Cooledge v. Melvin*, 42 N. H. 510; and contended that the case shows fraud as an inference of law which the court are bound to pronounce.

*Wheeler & Hall* and *Smith*, for defendant, cited and commented on *Avery v. Bowman*, 40 N. H. 453; *Hathaway v. Hemingway*, 20 Conn. 191; Pamph. Laws, ch. 2234; *Miller v. Earle*, 24 N. Y. 110; *Felton v. Wadsworth*, 7 Cush. 587; *Davis v. Charles*, 8 Barr. 82; *Caldwell v. Fifield*, 4 Zabriskie 150; *Reynolds v. Damrell*, 19 N. H. 394; *Kimball v. Wellington*, 20 N. H. 439; *Strong v. Wheeler*, 5 Pick. 410; *Chase v. Wyeth*, 17 N. H. 486; Am. Law Reg. N. S. vol. 5, p. 201; *Swinfen v. Bacon*, 6 Hurl. & Nor. 184 and 846; *Snow v. Prescott*, 12 N. H. 535.

SARGENT, J. The decisions on this subject have not been entirely uniform. It has been held that where an attachment of property has been made, or a bail taken on mesne process, if the plaintiff and defendant enter into a reference of that action and all demands, such reference operates as an immediate and absolute release or dissolution of the attachment or discharge of the bail; that it makes no difference in such case, whether any new demand be introduced beyond the original cause of action, or if any such demand is introduced, whether it is allowed or not; that no circumstances in the trial of the case will or can change this result, that the mere act of reference produces this effect, and must necessarily do so in all cases in which the rule of reference is not discharged. *Bean v. Parker*, 17 Mass. 603; *Hill v. Hunnewell*, 1 Pick. 192; *Mooney v. Kavanagh*, 4 Greenl. 277; *Clark v. Foxcroft*, 7 Greenl. 348.

It was also held that if one creditor having a prior attachment amends his declaration, by adding a new count for a new and additional cause of action, this would in law release and dissolve his attachment as against any subsequent attaching creditor, whether any claim were presented or allowed under this new count or not.  *Willis* v. *Crooker*, 1 Pick. 204; *Clark* v. *Foxcroft, supra.*  But both these positions have been overruled.

All proper amendments for the same cause of action may be allowed and made without affecting the attachment; and even where an amendment was made which introduced a new and additional cause of action, yet, if in the end judgment be taken only upon the demand originally included in and covered by the first declaration, the attachment will not be dissolved.  And where the matter in suit was referred with all demands, it has been held that it might be shown affirmatively that no new demand had been proved or allowed before the referee, and in such case, judgment being rendered on their report, the original attachment would not be dissolved.  *Seeley* v. *Brown*, 14 Pick. 177; *Laighton* v. *Lord*, 29 N. H. 237, 258.

In *Felton* v. *Wadsworth*, 7 Cush. 587, the authorities are examined somewhat.  There, the attorney for the plaintiff, in making up the amount of his client's damages, took judgment for the whole amount of the principal and interest upon the note in suit, where there had been partial judgments which should have been deducted.  The execution was committed to the officer, but, before thirty days expired, the plaintiff, learning that his judgment was too large, went to the officer to give him the information, and to give him instructions in regard to the collection of the execution.  In that case it was offered to be shown in evidence that this error occurred through the inadvertence of the counsel; that it was a mere mistake, and that as soon as the facts were known to the plaintiff in that execution, he at once took measures to correct the error; and it was held, that, upon such evidence, the attachment could not be held to be dissolved, that, in the absence of all fraudulent intent, and where no wrong had been committed, and none attempted or intended, the judgment should not be wholly set aside; that in such case there was no just principle upon which the plaintiff could be deprived of his honest due; that where the whole attachment is held void in such cases, because a part of the judgment only is erroneous it is in the nature of a penalty or forfeiture, and intended to prevent fraud and wrong doing, and that such penalties and forfeitures are and should be visited only upon fraud and wrong.

In *Hathaway* v. *Hemingway*, 20 Conn. 191, this principle is carried still farther, and it was held, that, where the error in the amount of the judgment, in consequence of not deducting the endorsement upon the note in suit, had not been corrected, but the execution for the whole amount had been levied and satisfied upon the debtor's real estate, this would not make the levy void as to subsequent attaching creditors, if the error in the judgment happened through inadvertence and mistake merely; but that if it was by any intent to defraud, if the error were intentionally made, then the attachment would be held void and the

judgment also, as against subsequent attaching creditors; that if the error was merely a mistake and wholly unintentional, the plaintiff in that suit would hold the land set off to him, but that he might be compelled to pay to other *bona fide* creditors of his debtor the amount which he had collected over and above the sum actually his due, by proceedings in chancery. This case is cited as authority in *Avery* v. *Bowman*, 40 N. H. 453.

The proper view of the subject seems to be · that any increase of the *ad damnum*, any amendment or change in the form of the action which would be to the prejudice of subsequent attaching creditors, will not be allowed, and any such change made to the actual prejudice of the rights of such creditors, will dissolve the attachment as against such creditors. It will also discharge bail. The subsequent attaching creditor has a vested right to the excess beyond the amount of the judgment to be rendered upon the writ of the first attaching creditor as it was when served. So bail is not to be made liable for a greater sum than was included in the writ at the time when they entered into the bail bond. So that, after an attachment or holding to bail, the plaintiff cannot alter his writ to the injury of a subsequent attaching creditor or bail. *Willis* v. *Crooker*, 1 Pick. 206; *Bean* v. *Parker*, 17 Mass. 591; *Laighton* v. *Lord*, 29 N. H. 257.

But any proper amendment may be made provided the action be still for the same demand originally sued; for it is clear that neither bail, nor receiptors, nor subsequent attaching creditors have any right in law or justice to complain, when the amendment made does not in fact prejudice their rights, by increasing the responsibility of bail or receiptors, or tend to diminish the surplus property to which such subsequent attaching creditor may be entitled, according to the conditions of the action at the time of the service of the writ. *Laighton* v. *Lord*, *supra*, and cases cited. And it is the right of the plaintiff to give in evidence under the various general counts all such claims as he may possess at the time, which are proper and which were intended to be embraced therein, to the extent of the claim made in the declaration.

Hence, it was held in *Clark* v. *Foxcroft*, 7 Greenl. *supra*, that the rights of the parties must be determined according as they stood at the commencement of the action, and that the rights of subsequent attaching creditors cannot be affected by agreements made between the prior attaching creditor and his debtor after the attachments are made, or by any admissions made by the debtor subsequent to the attachments which might enable the first attaching creditor to recover against him claims, on which he had not a good cause of action at the time his suit was commenced. And where the first attaching creditor had included in his judgment, one claim of $46.16, which, as the facts stood at the date of his writ and of his attachment, could not have been recovered under either count in his writ, though it was claimed that the debtor's admissions, made subsequent to the suit, had rendered it recoverable; and another claim of $134.20, for which no right of action existed at the time of the judgment, it was held, that, on both grounds, the attachment must be held void, as against subsequent attaching creditors, for the rea-

son that there was, in the transaction by which judgment was taken by agreement for these sums, a fraud in law, and an injury done to subsequent attaching creditors. And it has been repeatedly held that the introduction of any new cause of action or the allowance of any amendment of the declaration, either of which may have enlarged the amount of damages actually recovered, operates to vacate the attachment.

So, also, a party having a claim clearly defined and well ascertained, for which he is entitled to take judgment against his debtor by a priority of lien by attachment, has no right to add to his just demand a sum clearly not due, and take judgment for the whole. Such acts by the first attaching creditor vacate the whole attachment, as against subsequent attaching creditors ; that part of the judgment which was good being vitiated by that which is bad. *Fairfield* v. *Baldwin*, 12 Pick. 398 ; *Peirce* v. *Partridge*, 3 Met. 49.

This is upon the presumption that the prior attaching creditor acts understandingly in what he does, and that his act is not one of mere mistake and inadvertence, as in the cases cited. Where such is found to be the fact, it clearly negatives the presumption which may ordinarily be made, that every man acts understandingly, and is to be held responsible for the natural effects and legitimate results of such action. This is the natural and the legal presumption, until the mistake or inadvertence be clearly established affirmatively.

If there be any secret trust for the benefit of the debtor reserved in the judgment by any agreement between the creditor and his debtor, the law pronounces such judgment fraudulent and void as against other creditors of the same debtor. *Cooledge* v. *Melvin*, 42 N. H. 510, and cases cited. So, if the judgment be taken in a way and with intent to defraud, hinder or delay other creditors of the debtor, the law would pronounce that judgment fraudulent and void as against such creditors. *Robinson* v. *Holt*, 39 N. H. 557.

So, if a prior attaching creditor takes his judgment for a larger amount than he could properly have done under his declaration, either in consequence of adding amendments for new causes of action, or without such amendments, or if he take judgment for a claim larger than was due at the time the writ was made and served, or on any other claim than that which was intended to be included in the suit at the time of the attachment, even though the *ad damnum* in the writ, and the counts in the original declaration were large enough to have covered them, and should seek to collect this whole amount of his debtor, this would be doing a wrong to the rights of subsequent attaching creditors which vitiates his attachment, as against such creditors, unless it be shown affirmatively that the error was the result of mere mistake or accident, in which last case the whole judgment will not be held void as to subsequent attaching creditors ; but in the absence of such affirmative proof of mistake, &c., the wrong done to subsequent attaching creditors, or attempted or intended to be done, the law pronounces a fraud upon them, and visits that fraud with its ordinary penalty ; it makes the judgment into which the fraud enters void as to those injured or intended to be injured by the fraud, and the attachments are so far vitiated.

Let us apply these general principles deduced from the authorities to the facts in this case. When Asa Jewett commenced his suit against John R. Jewett, he held certain notes which were covered by the count for money had and received, and a claim for goods sold, covered by the count for goods sold, and there was another count upon a claim growing out of the estate of their father. There is no objection that the notes filed for judgment were not due at the date of the writ and properly included here, and nothing is included in the judgment under the third count. Suppose that the charge for cash lent could be recovered upon the evidence introduced at the trial, as money had and received. Take $121.47 of that amount which would be sufficient with the notes to amount to $500.00, all that could be recovered under the first count, and there would be left $43.86, just the amount, lacking six cents, which had been actually paid of that charge, as appeared by the credits on defendant's own book. Allowing this item to be thus disposed of properly, there remain the items of money paid, $107.85. Use of horse and sawing, $61.14, and the interest on oxen, $43.00, amounting in all to $211.99, which is included in this judgment, which could not properly be recovered under any count in the declaration.

But should it be claimed that the sum of $322.16, which was credited on defendant's books, and which is said to have been applied on the claim growing out of the estate, might have been applied in payment of these items, and then an equal amount might have been recovered under the third count, so that the amount of the judgment would thus have been as large as now, and that this misapplication was made, or consented to by this defendant, not knowing that it made any difference in law, and in that way by mistake or inadvertence, this credit had been applied on the wrong claim, but that the amount of the judgment had not been increased and the subsequent attaching creditors had not been injured by such an arrangement; if this should all be proved it would hardly relieve the defendant, because there are other matters in this case which cannot be thus accounted for, even if the items of credit could be.

When Asa Jewett brought his suit and made his attachment, and this plaintiff had attached subsequently, she acquired a vested right in all the property attached subject to the defendant's lien for such debts as were then due him from John R. Jewett, which could be properly recovered under the counts in his declaration. The amount credited, so far as it had been specifically applied, must be deducted, and where not thus applied, it was the right of this plaintiff to have it applied upon some *bone fide* debt due from John R. to Asa when the suit of the latter was commenced. But instead of this, this defendant upon his own showing, has taken a part of these credits and applied upon a claim of some kind which he bought against said John R. of one Fox, about the time the agreement for judgment was made. That was an injury to the rights of this plaintiff as subsequent attaching creditor; it was a misapplication of payments of which this plaintiff had a right to complain as a wrong and a fraud upon her. Instead of applying the credits given before the date of the suit, to reduce the honest indebtedness of John

R. to Asa Jewett, they were applied by them to pay a claim which Asa did not own at the date of his suit, and which had no connection whatever with the suit or with the credits given.

But that is not all. We find that the judgment also includes the sum. of $37.88, charged in account after the date of the writ, which is clearly not recoverable in this suit. And whatever may be said in regard to the other errors, of which we have spoken, the defendant cannot claim ignorance, or mistake, or inadvertence in the application of money paid on other claims, and which this plaintiff had a right to have applied on the claims against John R. Jewett, which were due to Asa, when he brought his suit upon a claim which he had bought just before the judgment, nor in the fact that his account included charges made subsequent to the date of his writ, to the amount of $37.88. These facts were as well understood by the defendant when he took his judgment as when he testified to the facts.

We think the facts stated in the case show that what this defendant did knowingly and intentionally in thus taking judgment for more than could properly have been recovered at the commencement of his suit against his brother, and then undertaking to collect the whole amount against his brother amounted to a fraud upon this plaintiff as a subsequent attaching creditor, and that, as against her, this defendant's attachment must be held to be dissolved. The fact that John R. Jewett was willing to agree to such a judgment in that case against himself and in favor of his brother, who was the first to sue him, looks very much like collusion between them, to get the property into Asa's hands at the expense of other creditors.

But as there was no verdict in this case, and no agreement for judgment, we can only sustain the plaintiff's exception to the ruling of the court, and the

.  *Case is discharged.*