JEROME MARBLE & others *vs.* JAMESVILLE MANUFACTURING COMPANY & another.

Worcester.    October 2, 1894. — March 1, 1895.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Petition in Insolvency against Corporation — Statute — Dissolution of Attachment.*

A petition in insolvency cannot be maintained against a corporation which failed to dissolve an attachment within the time provided in Pub. Sts. c. 157, § 136, but dissolved the same before the actual filing of the petition.    KNOWLTON, J. dissenting.

The attorney of an attaching creditor has authority to release the attachment, and a paper addressed to the register of deeds reciting that the attachment is dissolved and requesting that such fact be noted on the record of attachments, signed by the attorney, and delivered to the debtor's attorney for the purpose of dissolving the attachment, has the effect to dissolve it at once, and before the entry is made on the record.

PETITION IN EQUITY, under Pub. Sts. c. 157, § 15, to revise a decision of the Court of Insolvency dismissing a petition for the issuing of a warrant against the respondent corporation.    The case was heard and reserved by *Barker*, J. for the determination of the full court.    The facts appear in the opinion.

The case was argued at the bar in October, 1894, and afterwards was submitted on the briefs to all the judges.

*F. P. Goulding*, (*E. H. Vaughan* with him,) for the petitioners.

*H. W. King & C. M. Rice*, for the respondent corporation.

*W. S. B. Hopkins & F. B. Smith*, for the Judge of Insolvency.

ALLEN, J.    The question in this case is whether a petition in insolvency can be maintained against a corporation which failed

to dissolve an attachment within the time provided in Pub. Sts. c. 157, § 136, but dissolved the same before the actual filing of the petition.

It has been held in England, that a clear, unequivocal act of bankruptcy could not be explained by any subsequent circumstances, but where the act was in itself doubtful it might be explained. *Hopkins* v. *Ellis*, 1 Salk. 110. *Colkett* v. *Freeman*, 2 T. R. 59. Robson, Bankruptcy, (7th ed.) 133. Assuming, without discussion, that this would be adopted here as a general rule, we have to consider whether the course of legislation in this Commonwealth shows an intention to place the failure to dissolve an attachment on different ground, and to require that such failure shall continue to the time of filing the petition against the debtor, in order to serve as a basis for involuntary proceedings in insolvency.

The original provisions for involuntary proceedings in insolvency against an individual are found in St. 1838, c. 163, § 19. Three grounds are specified: 1st. If a person arrested on mesne process upon a claim of a certain character fails to give bail within a specified time. 2dly. If upon such a claim a person is actually imprisoned for more than thirty days. 3dly. "If any person whose goods or estate are attached on mesne process in any civil action founded on such contract, for the sum of one hundred dollars or upwards, shall not, on or before the last day of the term of the court to which such process is returnable, dissolve the attachment in the manner hereinafter provided." Section 20 provides that any person whose goods or estate are attached may at any time before final judgment therein dissolve the attachment by giving bond. Section 21 provides for proceedings in the case of insolvent partners, and enacts that, with certain exceptions, such proceedings shall be conducted in like manner as if against one person alone. The above statute contained no provision authorizing proceedings in insolvency by or against corporations.

The St. of 1844, c. 178, § 9, added certain acts which should serve as the grounds of proceedings against individuals, and by § 12 a slight change was made in the time within which an attachment must be dissolved; in this respect amending St. 1838, c. 163, § 19. A further change in this last particular was made

by St. 1851, c. 189, § 2 ; and in § 3 a wholly new enactment was made, as follows : " Whenever any person shall, by accident or mistake, have failed to dissolve an attachment made as aforesaid, he may forthwith apply, by petition, to the commissioner before whom proceedings against him are pending, for a stay of the said proceedings ; and, after such notice to the petitioning creditor as such commissioner shall order, or without notice if the urgency of the case shall not allow notice to be given, the said proceedings may be stayed by an order of such commissioner until a hearing ; and if, upon the hearing before such commissioner, such person shall prove to his satisfaction that he is in fact solvent, or that for any other cause such proceedings ought to be stayed, the said commissioner shall thereupon order the proceedings aforesaid to be suppressed and finally stayed."

The above statute in terms relates only to cases where proceedings in insolvency were actually instituted and pending while the attachment remained in force, and it provides that even in such case they might be stayed. This strongly implies that no such proceedings should be instituted after the attachment was dissolved, whether within the prescribed time or not. The statute was not intended to be punitive, but remedial, and where a remedy was given either to the creditor or to the debtor a liberal construction should be given in favor of the party whom the particular provision under consideration was designed to benefit. The principal object of the provision making a failure to dissolve an attachment within a specified time a ground of proceedings in insolvency was to prevent one creditor from obtaining a preference over the others in this way. If an attachment was not dissolved, the attaching creditor would be likely to obtain a lien which could not be removed. Therefore the statute allowed other creditors to file a petition in insolvency based on this failure, and the assignee in insolvency could take the property discharged of the attachment. *Bates* v. *Chapin*, 8 Cush. 99. This decision was in 1851, and was made after the St. of 1851, c. 189, went into effect; but no question arose under § 3 of the statute. The provision that the proceedings might be stayed if the debtor should prove his solvency, or that for any other cause they ought to be stayed, clearly shows that the

Legislature wished to guard against oppression in the use of the power to proceed against a person in insolvency on the ground of his having failed to dissolve an attachment. Without speculating as to other causes which might be deemed sufficient to warrant or require a stay of proceedings, it is quite clear that the subsequent dissolution of the attachment might of itself be so considered.

If this construction is adopted, it follows by implication that a dissolution of an attachment at any time before the actual institution of proceedings in insolvency might be held to cut off this ground for such proceedings under the statutes cited. If upon the state of facts which existed the proceedings might be stayed, certainly upon those same facts it might be held that the proceedings ought not to have been instituted. The Legislature could not have intended to say that the same state of facts should serve as good ground for instituting proceedings, and should also serve as good ground for staying them.

By St. 1851, c. 327, for the first time, proceedings in insolvency by and against corporations were authorized. This statute was passed by the Legislature only four days after St. 1851, c. 189, but the time of its taking effect was postponed for a few months. The provisions for involuntary proceedings against corporations are found in § 17, and only two grounds are assigned, viz. the failure to dissolve an attachment and the making of a fraudulent conveyance. The provision as to attachments is as follows: " If any corporation whose goods or estate are attached on mesne process in any civil action founded on a contract for· the sum of one hundred dollars or upwards, which is in its nature provable under this act, shall not, within fourteen days from the return day of the writ, if the term of the court to which the process is returnable shall so long continue, or on or before the last day of the said term if the same shall sooner end, dissolve the attachment in the manner hereinafter provided," a petition in insolvency may be filed against such corporation. There is a difference of detail between the right of an individual and of a corporation to dissolve an attachment under the statutes then existing. The individual might do it at any time before final judgment. St. 1838, c. 163, § 20. The corporation could only do it within fourteen days from the return day of the writ,

or on or before the last day of the return term. St. 1851, c. 327, §§ 17, 18. Moreover, in the case of a corporation, the statute did not in express terms fix a limit to the time within which proceedings against it might be instituted.

A later provision in § 17 of St. 1851, c. 327, is as follows: "And whenever any corporation shall, by accident or mistake, have failed to dissolve an attachment made as aforesaid, it may forthwith, and at any time before the said commissioner shall have issued his warrant, as aforesaid, apply by petition to any justice of the Supreme Judicial Court for a stay of the said proceedings, and, after such notice to the petitioning creditor as such justice shall order, or without notice if the urgency of the case shall not allow notice to be given, the said proceedings may be stayed by an order of such justice until a hearing; and if, upon the hearing before such justice, the corporation shall prove to his satisfaction that it is in fact solvent, and if it shall not appear that such corporation has made any fraudulent conveyance of its property, the said justice shall thereupon order the proceedings aforesaid to be superseded and finally stayed."

This provision for a stay of proceedings against a corporation in case of its failure to dissolve an attachment differs somewhat in its details from the corresponding provision which is applicable to individuals; but the essential purpose of the statute is the same, namely, to prevent this act of insolvency from being used oppressively. In terms, it only relates to cases where proceedings in insolvency were actually pending before the attachment was dissolved. But the implication is equally clear that a dissolution of an attachment at any time before the actual filing of a petition in insolvency might be held to cut off the right to maintain such a petition on this ground.

Such was the condition of the statutes at the time of the adoption of the General Statutes in 1860.

Certain changes were then introduced. By Gen. Sts. c. 123, § 104, corporations, in respect to the right to dissolve attachments at any time before final judgment, were put on the same footing with individuals, the revising Commissioners saying in their notes, "There seems to be no good reason for the distinction in the two cases."

By Gen. Sts. c. 118, § 103, "If any person whose goods or

estate are attached . . . has not within seven days from the return day of such process dissolved the attachment in the manner provided in chapter one hundred and twenty-three," a creditor's petition in insolvency may be filed against him within ninety days thereafter.

Section 105 is as follows : " When a person by accident or mistake has failed to dissolve an attachment within the time required by section one hundred and three, he may forthwith apply by petition to the judge before whom proceedings against him are pending, for a stay of the proceedings, and after such notice to the petitioning creditor as the judge orders, or without notice if the urgency of the case does not allow notice to be given, the proceedings may be stayed by an order of the judge until a hearing; and if upon the hearing he proves to the satisfaction of the judge that he is in fact solvent, or that for any other cause the proceedings ought to be stayed, the judge shall order the proceedings to be stayed and finally suppressed."

The provisions for involuntary proceedings against corporations are found in Gen. Sts. c. 118, § 122. " If a corporation whose goods or estate are attached . . . does not within fourteen days from the return day of the writ, if the term of the court to which the process is returnable so long continues, or on or before the last day of the term if the same sooner ends, dissolve the attachment in the manner provided in chapter one hundred and twenty-three," a creditor's petition in insolvency may be filed against it, no limitation for the time of such filing being fixed in express terms.

The provision for granting a stay of proceedings when by accident or mistake a corporation has failed to dissolve an attachment, contained in St. 1851, c. 327, § 17, is not in terms repeated in the General Statutes, nor is it contained in the report of the revising Commissioners. The Commissioners make no mention of the omission, and do not express any intention to exclude corporations from the benefit of such a provision. On the other hand, after referring to the somewhat confused state of the statutory provisions, as then existing, they say : " In attempting to reduce this chaos to form and order within a reasonable space, the Commissioners have been obliged to make extensive changes in the phraseology. . . . The only changes

in the existing rules which are deemed of importance are noted below." No mention being made of the omission of the provisions for staying proceedings in the case of corporations, it seems clear from the above statement that the Commissioners did not intend to provide for changing the law in this respect, and it is probable that the omission was by accident, or it may have been thought that the provisions of § 105 would extend to corporations. The report of the legislative committee which acted upon the report of the Commissioners makes no reference to this matter. Neither of these considerations would be decisive to show that no change in the law was made by the true construction of the statutes as enacted; but prior to the actual enactment of the General Statutes, we find nothing to show that such change in this particular was contemplated.

There may be a difficulty in applying the language of Gen. Sts. c. 118, § 105, to corporations. Whether this difficulty is insuperable or not, we need not inquire. But we are of the opinion that the unexplained omission to provide in express terms for staying proceedings which have actually been instituted in case of a failure to dissolve an attachment by accident or mistake did not have the effect to render a corporation liable to such proceedings after a dissolution of the attachment, even though such dissolution was not within the prescribed time.

The foregoing provisions of the General Statutes, with certain amendments which are not material here, are embodied in the Pub. Sts. c. 157, §§ 112, 115, 136; c. 161, § 122; and in respect to staying proceedings in insolvency which have been commenced against a corporation, no change from the General Statutes was made in the Public Statutes.

In view of this summary of the statutes, we are of opinion that the Legislature intended to allow the filing of a petition in insolvency against a person or a corporation on this ground, provided the attachment remains in force at the time when the creditor's petition is filed, and not otherwise.

The St. of 1894, c. 139, authorizing a stay of proceedings in insolvency against persons and corporations in certain cases, was passed too late to affect the present case. This statute is broader in its scope than those we have considered, but it may be observed

that, according to its express terms, it relates only to staying proceedings which have actually been instituted, and it does not in terms say that no proceedings on the ground of a failure to dissolve an attachment within the prescribed time shall be instituted after the actual dissolution of such attachment.

There seems to be no doubt that the attachments in the present case were effectually dissolved before the filing of the creditor's petition. The attorneys had authority to release them. *Moulton* v. *Barker*, 115 Mass. 36. The papers signed by them respectively were delivered to the debtor's attorney for the purpose of dissolving the attachments, and had the effect to dissolve them at once, and before the entries were made upon the record.* *Benson* v. *Carr*, 73 Maine, 76. Attachments may be dissolved in different ways, and in none of them is an entry upon the record essential. See *Freeman* v. *Creech*, 112 Mass. 180; Pub. Sts. c. 161, §§ 52, 54, 55; c. 157, § 46; c. 161, §§ 122, 126; Sts. 1884, c. 236; 1889, c. 406.

In the opinion of a majority of the court, the entry must be,
*Petition dismissed.*

KNOWLTON, J. By Pub. Sts. c. 157, § 112, it is provided that "if a person arrested on mesne process in a civil action for the sum of one hundred dollars or upwards, founded upon a demand in its nature provable against the estate of an insolvent debtor, has not given bail therein on or before the return day of such process, or has been actually imprisoned thereon for more than thirty days, or if a person whose goods or estate are attached on mesne process in such action founded upon such contract has not before the return day of such process dissolved the attachment in the manner provided by law, . . . or, being a banker, broker, merchant, trader, manufacturer, or miner, has fraudu-

---

* These papers, except that the date and the name of the action differed in each, were in the following form, and were signed by the petitioners' attorneys :

"To the Register of Deeds, Worcester District : Sir, — The attachment of the real estate and personal property of Jamesville Manufacturing Company in said District, made on the 29th day of July, 1893, in an action commenced in the Superior Court by J. F. & C. G. Warren, Plaintiff, is hereby dissolved, and you will please make a note to that effect on the record of attachments in your office."

lently stopped payment or has stopped or suspended and not re-sumed payment of his commercial paper within a period of four-teen days," or has committed any one of several other specified acts of insolvency, "any of his creditors whose claims provable against his estate amount to one hundred dollars may, within ninety days thereafter, . . . apply by petition to the judge" of insolvency, and cause him to be adjudged an insolvent debtor. In § 136 of the same chapter there are similar, al-though slightly different, provisions for involuntary proceed-ings against corporations. The opinion of the majority of the court denies the right of creditors to proceed under either of these sections, if a debtor has failed to dissolve an attachment within the time prescribed, unless it also appears that he has failed to dissolve it afterward, and has continued his failure up to the time of filing the petition against him. It seems to me that this opinion contradicts the plain language of each of these sections, which were originally enacted at different times in somewhat different terms.

It was a fundamental principle of English law, that a plain act of bankruptcy could not be purged. *Hopkins* v. *Ellis*, 1 Salk. 110. *Colkett* v. *Freeman*, 2 T. R. 59. Robson, Bankruptcy, (7th ed.) 133. It seems to me that our American statutes have gen-erally adopted this principle. It has been so held under the United States bankruptcy acts, and it must be so held under the statute of this Commonwealth, unless its express provisions are set aside.

If a debtor has "suspended and not resumed payment of his commercial paper within a period of fourteen days," or if he has been arrested on mesne process and has not given bail before the return day of the process, or if he has been imprisoned on such process for more than thirty days, I can see no good reason why it must not be shown that his failure to resume payment, or to give bail, or to get released from imprisonment, has continued up to the time of filing the petition against him, as well as his fail-ure to dissolve an attachment in a similar case. In *Mendenhall* v. *Carter*, 7 Nat. Bankr. Reg. 320, 322, it was said of suspen-sion of payment of commercial paper, that to constitute this act of bankruptcy the debtor "must fail to resume payment within a period of fourteen days," and that, "if payment should

be made in twenty days after suspension, this will not do away with the act of bankruptcy." In each of the following cases it is assumed that the right of creditors to proceed becomes complete at the expiration of fourteen days, if there has been no resumption of payment within that time. *In re Weikert*, 3 Nat. Bankr. Reg. 27. *In re Thompson*, 3 Nat. Bankr. Reg. 185. *Hardy* v. *Bininger*, 4 Nat. Bankr. Reg. 262. *In re Mc-Naughton*, 8 Nat. Bankr. Reg. 44. *In re Clemens*, 8 Nat. Bankr. Reg. 279. *In re Wilson*, 8 Nat. Bankr. Reg. 396. In *In re Cohn*, 7 Nat. Bankr. Reg. 31, it is assumed that a similar rule applies if one fails to get relieved from arrest within the time named in the statute. In all the decisions of the many courts of the United States that have administered the bankruptcy law I have been unable to find one that suggests a different rule.

There are important reasons why one who has committed an act of insolvency or of bankruptcy by an omission to meet a liability within the time required by the statute should be liable to proceedings, even if he attempts to correct the error by meeting the liability afterwards. In cases where the debtor desires the aid of the insolvency court, provisions for involuntary proceedings are of no consequence. But where he desires to avoid an honest and equitable settlement, or to go on with his business when the interests of his creditors require that he should stop it, it is of great importance that his creditors should have a right to proceed against him. Often the amount involved in an act of insolvency is small, but the statute attaches significance to the act as an indication of the debtor's condition or intention. Frequently a debtor will manage to avoid or conceal acts of insolvency for the purpose of preventing proceedings against him until he is unable to pay more than a small percentage of his debts. If, having once committed an act of insolvency, he could purge himself of it by giving a bond to dissolve an attachment, or giving bail, or procuring payment of a small debt to which the act related, his creditors might be remediless while he was wasting his estate. So the statute gives creditors an absolute right to commence proceedings on commission of either of the specified acts. But inasmuch as attachments of some kinds of property may be made by an entry of record without interfering with the possession or use of it, and such attachments often are not dissolved at once,

it seems to have been thought that a way should be provided for obtaining relief from the effects of an act of insolvency of this kind without settling the affairs of the debtor in the Court of Insolvency.   Accordingly, St. 1851, c. 189, § 3, was passed, (Pub. Sts. c. 157, § 115,) which gives to a person who " by accident or mistake, or other sufficient cause, has failed to dissolve an attachment within the time required by section one hundred and twelve," the right to apply to the judge and have the proceedings stayed and dismissed if he proves " that he is in fact solvent, or that for any other cause the proceedings ought to be stayed."   By St. 1851, c. 327, § 17, in case of like failure to dissolve an attachment by a corporation, the corporation might apply to a justice of the Supreme Judicial Court, and upon similar proof have the proceedings finally stayed.   This provision in regard to persons seems to me to assume that the right of the creditors becomes absolute, and that this kind of relief may be needed on failure " to dissolve an attachment within the time required by section one hundred and twelve," which time is " before the return day of such process."   I can find nothing to show that it limits the right to relief to cases where there has been not only a failure to dissolve it within the time stated in the statute, but also a failure to dissolve it for an additional time up to the commencement of proceedings in insolvency.   The relief granted is a stay of proceedings, and it cannot be granted until proceedings are commenced, because if no proceedings are commenced no relief is needed.   But to my mind there is a plain implication that the relief may be needed, and the proceedings may be commenced if the contingency mentioned in the statute happens, without regard to what may be done by the debtor afterwards.   The same considerations apply to the statute above cited in regard to corporations.

This relief is given by the statute only when the debtor proves at the hearing that he is in fact solvent, or that for some other cause the proceedings ought to be stayed.   Under the opinion of the majority of the court, the debtor may be guilty of an act which is stated in the statute to be an act of insolvency, but he can afterwards defeat the proceedings against him without reference to the question whether he is solvent, or whether for any

cause the proceedings ought to be defeated.  This seems to me in conflict with the intent and spirit of the statute, as well as with its letter.

The St. 1894, c. 139, extends this relief to a person or corporation that " has committed any act of insolvency from which he or it should be equitably relieved."  I think the term " act of insolvency " in the statute means any of the acts specified in the statute as a ground for the commencement of proceedings against a debtor, and that this statute makes no distinction between failure to dissolve an attachment and failure to give bail, or to be discharged from arrest, or failure to resume payment of commercial paper, within the time prescribed in the section.  Considered in reference to this last statute, the opinion of the majority allows one who has failed to dissolve an attachment within the time specified to obtain immunity from proceedings by his subsequent act, without regard to the equitable considerations that are made the foundation for relief under this chapter.

In this view of the law, a creditor never has any but a contingent right to proceed against a debtor under this clause of the statute.  He may begin to prepare his petition and put his proofs in form, and the debtor, though deeply insolvent, may afterward take away the foundation of his case by dissolving the attachment.  In preparing his petition, if he alleges all that the statute states to be necessary it is not enough, for he must prove more.  If he goes further, and alleges that the debtor has not at any later time dissolved the attachment, and makes affidavit to the statement as the law requires, it may be true when he makes the affidavit, but untrue an hour afterwards when he files his petition.  It seems to me that it would require very plain language to justify a construction of the statute which would never give the creditor an absolute right to proceed, but only a contingent right up to the very moment when his petition is filed.

In many cases it has been assumed by this court in its opinion, as well as by counsel in their proceedings, that the right of the creditor to proceed under this clause of the statute is absolute as soon as the prescribed time has expired without a dissolution of the attachment, and that it is not necessary to allege or prove that the debtor's default has continued after the expiration of

that time.  *Kimball* v. *Morris*, 2 Met. 573, 578.  *Dennis* v. *Sayles*, 11 Met. 233.   *Thompson* v. *Snow*, 4 Cush. 121, 126.  *Bates* v. *Chapin*, 8 Cush. 99, 101.   *Wheeler* v. *Bacon*, 4 Gray, 550.   *O'Neil* v. *Glover*, 5 Gray, 144, 157.   *Gross* v. *Potter*, 15 Gray, 556.   I have failed to find anywhere an intimation of a contrary doctrine.

There are indications that § 17 of St. 1851, c. 327, was left out of the General Statutes inadvertently, and perhaps that fact might properly affect the decision of this case on grounds other than those relied upon in the opinion.   But the error, if it was an error, has been corrected by St. 1894, c. 139, and no other case can ever be affected by it.

The doctrine asserted in the opinion of the majority seems to me wrong, because in my view it is contrary to the decisions of the English courts and of the Federal courts in this country; because it sets aside the express provisions of several sections of the statutes of this Commonwealth enacted at different times, and the plain implication of other sections; because, in giving a different kind of interpretation to the language defining one act of insolvency from that given to similar language defining other acts of insolvency, it introduces a strange anomaly into our law; because it is at variance with the construction of the statute assumed to be correct in several decisions of this court, and in the opinions and practice of courts generally; and because it substitutes a law bad in its practical working for that which, under a different construction, would be easily administered and would protect the rights of everybody.