## UNDERWRITERS' SALVAGE CO. OF NEW YORK v. GILMAN.

(Circuit Court of Appeals, First Circuit. June 10, 1924.)

No. 1647.

1. **Attachment ☞267—Lien is lost by including cause of action in new suit.**

Amendment of the declaration in a pending action to include an additional cause of action, on which an action had previously been brought and an attachment levied, operated as an abandonment of the prior suit and a dissolution of the attachment.

2. **Bankruptcy ☞164—Payment on debt after lien of attachment had been lost held preference.**

Where a creditor secured a lien by attachment more than four months prior to the debtor's bankruptcy, but subsequently abandoned the suit, a payment on the debt after the attachment lien had been lost and within the four months period *held* a preference.

3. **Bankruptcy ☞156—Pleading ☞240—Right of trustee to attack validity of amendment of declaration in attachment suit; "person other than party to record."**

Gen. Laws Mass. c. 231, §§ 51, 138, permit amendment of the declaration in an attachment suit to enable plaintiff to sustain the action for the cause for which it was intended to be brought, and provide that allowance of the amendment shall be conclusive evidence of the identity of the cause of action, but that no subsequent attaching creditor or purchaser, or bail, or "any person other than the parties to the record," shall be bound by such allowance, unless he has had due notice of the application for leave to amend. *Held*, that "any person other than the parties to the record," within the meaning of the statute, and who may attack the validity of the amendment unless notified, is one who has acquired a vested interest in the property subsequent to the attachment and prior to the amendment, and does not include a trustee in bankruptcy of defendant, where the bankruptcy was subsequent to the amendment.

4. **Attachment ☞267—Amendment of declaration to include additional cause of action does not invalidate original attachment.**

In the absence of fraud, amendment of the declaration in an attachment suit, introducing an additional cause of action, does not vacate the attachment for the amount of the original claim.

5. **Bankruptcy ☞200(3)—Attachment lien acquired within four months held void.**

Where the declaration in an attachment suit commenced more than four months prior to bankruptcy of the defendant, but when he was insolvent, was amended within the four months, by introducing an additional

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

cause of action, the lien acquired by the original levy is valid, but under Bankruptcy Act, § 67f (Comp. St. § 9651), making void liens acquired by attachment within four months, the amendment cannot be permitted to relate back to validate the lien for the amount added thereby.

Appeal from the District Court of the United States for the District of Massachusetts; John A. Peters, Judge.

For opinion below, see 288 Fed. 1004.

John C. Coughlin, of Boston, Mass. (White & Barnes, of Boston, Mass., on the brief), for appellant.

Harris H. Gilman, of Boston, Mass. (Samuel Hoar and Robert R. Duncan, both of Boston, Mass., on the brief), for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges. Subsequently heard on reargument, at the request of the court, before BINGHAM and JOHNSON, Circuit Judges, and MORRIS, District Judge.

MORRIS, District Judge. This is a suit to recover a preference. The facts, as found and stated by the District Court, are as follows:

"I find that in the summer of 1920, Underwriters' Salvage Company, the creditor, had two accounts against Tileston & Livermore Company, the bankrupt, for $1,000, being balance due (without interest) on a lot of paper sold and money advanced on January 30, 1918, amounting to $5,500, and one for $250, being balance due (without interest) on a lot of paper sold on January 16, 1918, for $1,350.

"On June 2, 1920, the creditor brought suit against the bankrupt for the larger account in the superior court for Suffolk County and summoned as trustees National Grand Bank of Marblehead and Citizens' National Bank of Boston; service being made on the trustees June 3 and 4, 1920, respectively.

"The trustees answered 'funds'—the National Grand Bank, $48.68; the Citizens' National Bank, $140.20. On October 16, 1920, both trustees were discharged; the sums mentioned in their possession having been turned over to the Underwriters' Salvage Company at about the same time. On December 3, 1920, agreement for judgment for plaintiff in the sum of $1 and judgment satisfied was filed.

"On June 9, 1920, the same creditor, the Underwriters' Salvage Company, brought suit against the bankrupt for the smaller account mentioned, in the Boston municipal court, and summoned Houghton-Mifflin Company and others as trustees, service being made on the trustees June 11, 1920.

"Of the trustees named, Houghton-Mifflin Company, on June 28, answered 'Funds,' $829.80. On October 1, 1920, the plaintiff in this trustee suit in the municipal court filed a motion to amend its declaration, by striking out the declaration entirely and substituting another, which included both the accounts above referred to. This amendment was allowed, thus in effect adding the larger account to the smaller in the municipal court suit, after trustees in that suit had disclosed about $800 attached.

"On December 3, 1920, agreement for judgment for plaintiff in the sum of $1 and judgment satisfied was filed.

"On October 13, 1920, $804.90 had been paid to Underwriters' Salvage Company by Houghton-Mifflin Company upon an order signed by Tileston & Livermore Company.

"An involuntary petition in bankruptcy was filed against Tileston & Livermore Company on December 10, 1920, and adjudication followed on January 10, 1921.

"It is claimed by the trustee in bankruptcy in his bill that the payment to Underwriters' Salvage Company by the bankrupt through Houghton-Mifflin Company is a preference, alleging that it was made within four months prior to the filing of the petition, that Tileston & Livermore Company was then insolvent, that the effect of this payment was to enable Underwriters' Salvage Company to obtain a greater percentage of its debt than other creditors of the same class, and that Underwriters' Salvage Company at and before the date of payment had reasonable cause to believe that such payment would effect a preference.

"I find from the evidence that the above-mentioned essential elements of a preference exist in this case."

The assignments of error numbered 6, 7, and 8, challenging the finding that the appellant had reasonable cause to believe that such payments would effect a preference and enable the appellant to obtain a greater percentage of its debt than other creditors of the same class, are without merit. The evidence is ample to warrant this finding.

The appellant claims that the attachments of the funds in the possession of the trustees had become valid liens thereon more than four months prior to the bankruptcy proceedings.

In the District Court it was held that the amendment of the declaration in the action brought in the municipal court introduced an entirely new and different cause of action, and dissolved the attachment in that cause as to all persons not consenting thereto or not having notice; that it did not affect the trustee in bankruptcy subsequently appointed, and to whom no notice was or could have been given; and the appellant was ordered to restore to the bankrupt's estate the sum of $804.90.

Appellant's rights under its attachments are to be determined as of a date four months preceding bankruptcy, because liens subsequently acquired, even though valid under state laws, are discharged by bankruptcy. The expression that "local laws determine the existence, character, and validity of liens upon the property of the bankrupt" is not literally true; else, mortgages, attachments, and conditional sales made within four months, valid under state laws, would be valid liens as against a trustee in bankruptcy. However, they are not. Bankruptcy Act, § 68 (Comp. St. § 9652).

The question then is: What liens, valid under the laws of Massachusetts, had the appellant acquired prior to the four-months period?

That by an attachment a creditor secures a lien on the attached property only to the amount of his debt and costs is too well settled to require the citation of authorities.

[1] By the attachments of funds in the possession of the National Grand Bank of Marblehead, June 3, 1920, and in the possession of the Citizens' National Bank of Boston, June 4, 1920, the appellant secured liens valid as against its debtor's subsequent bankruptcy proceedings filed December 10, 1920, had such liens been retained. In re Blair (D. C.) 108 Fed. 529; Yumet & Co. v. Delgado, 243 Fed. 519. By these attachments, the appellant got security on $188.88 in the hands of the trustees. But when, on October 1, 1920, the appellant amended its declaration in the municipal court action, by striking out the prior declaration and filing a new one, including the $1,000, which was the entire amount of its claim in the suit in the superior court, the superior court action was abandoned. There can be no other logical conclusion drawn from the facts.

[2] It appears that the funds in the hands of the trustees last above mentioned were paid to the appellant subsequent to the time that it had apparently abandoned its action in the superior court. Such payments within a period of four months from funds upon which the appellant then had no valid lien constituted preferences, and the sums so paid may be recovered back by the trustee in bankruptcy.

Houghton-Mifflin Company disclosed funds to the amount of $829.-80, $804.90 of which was paid to appellant, who claims to hold the same by virtue of its attachment June 11, 1920, and the allowance of its amended declaration in the municipal court action, October 1, 1920. It claims the amendment related back to the commencement of its action and gave it a valid lien on the entire amount disclosed.

[3] Appellee claims, and the court below ruled, that the amendment introduced a new cause of action and avoided the attachment. G. L. Mass. c. 231, § 51, provides:

"The court may, at any time before final judgment, except as otherwise provided, allow amendments introducing a necessary party, discontinuing as to a party or changing the form of the action, and may allow any other amendment in matter of form or substance in any process, pleading or proceeding, which may enable the plaintiff to sustain the action for the cause for which it was intended to be brought, or enable the defendant to make a legal defense."

Id., § 138, reads as follows:

"The cause of action shall be considered to be the same for which the action was brought, if the court finds it to be the cause of action relied on by the plaintiff when the action was commenced, however the same may be misdescribed; and the allowance by the court of an amendment shall be conclusive evidence of the identity of the cause of action. But no subsequent attaching creditor or purchaser of property attached or bail or any person other than the parties to the record shall be bound by such allowance unless he has had due notice of the application for leave to amend and opportunity to be heard thereon, according to an order of notice to that effect to be issued by the court upon application of the plaintiff, and such third parties shall have the right of exception or appeal."

The attachment of the funds in the hands of Houghton-Mifflin Company created a valid lien to the extent of appellant's debt for the recovery of which suit was brought, viz. $250, interest, and costs. This lien continued superior to the rights of the trustee in bankruptcy, unless lost by reason of the allowance of the amendment October 1, 1920.

In the case of Driscoll v. Holt, 170 Mass. 262, 49 N. E. 309, the court, construing section 138, supra, said:

"The section of the statute quoted above shows that the legal right of the court to allow an amendment is the same against subsequent attaching creditors and subsequent purchasers of the attached property, and bail, and sureties upon a bond given to dissolve an attachment, as it is against the defendant himself. But any adjudication in the original action is not binding against such persons unless notice is given to them and they have an opportunity to be heard, with a right of exception and appeal. Not even against the defendant can an amendment be allowed, if it introduces a new cause of action. Against these other parties, as well as against the defendant, it may be allowed if it does not introduce a new cause of action. Amendments are often allowed without very close scrutiny of the cause of action, and often by consent of parties. The adjudication of the court allowing an amendment is conclusive evidence of the identity of the cause of action, as against the

defendant. The rights of third parties are sufficiently protected by the provision that they are not bound by this adjudication unless they are notified and given an opportunity to be heard. Although they are not bound by the adjudication, yet, if it appears, in subsequent proceedings to determine their rights and liabilities, that the adjudication was correct, the result is the same as if they had been made parties to the original suit in which a similar adjudication was made. The effect of these statutes, as interpreted by the recent decisions, is to retain the security of an attachment and of a bond given to dissolve an attachment when the judgment is for the same 'cause of action relied on by the plaintiff when the action was commenced,' even though the claim may at first have been so misdescribed as to appear to be smaller than it really was."

The foregoing is a comprehensive interpretation of the statute, but, except by inference, it does not determine the precise question at issue in the present case. From it we may fairly infer that third persons having vested interests have a right to intervene, and the right of appeal is given in the case in which the amendment is filed. If the amendment is allowed without notice and opportunity to intervene and be heard, it may be attacked in subsequent proceedings involving the rights of such third persons. In the case at bar no notice of the allowance of the amendment was given to the trustee in bankruptcy, nor could it have been given, because he had not then been appointed. Can it be said that the trustee in bankruptcy subsequently appointed is "a third party," within the meaning of section 138, supra, having a right to attack the allowance of the amendment in a collateral proceeding?

[4] The early cases, which hold arbitrarily that an attachment is vacated if an amendment is allowed introducing a new or additional cause of action, have been materially modified by statute, rules of court, and judicial construction. Courts now examine the facts having reference to the equities between the parties. This view as a guiding principle was stated by Woods, J., in the case of Laighton v. Lord, 29 N. H. 237, 255, wherein he said:

"Aside from all technical questions, we propose looking into the facts of this case, to learn whether it is one calling upon the common pleas to interpose an exercise of its power in the correction of the record, for the advancement of the ends of justice in the case in question."

The decisions, with reasonable uniformity, declare, as a general rule, that where a senior attaching creditor has included in his judgment a claim which he knew did not exist, or has fraudulently included a claim which could not be the subject of a suit, the fraud vitiates the attachment, as against subsequent creditors, upon the ground that the fraud "corrupts and destroys the whole." Fairfield v. Baldwin, 12 Pick. (Mass.) 388; Page v. Jewett, 46 N. H. 441; Peirce v. Partridge, 3 Metc. (Mass.) 44; Baird v. Williams, 19 Pick. (Mass.) 381; Hale v. Chandler, 3 Mich. 531. But there must be some element of unfair dealing which entered into the conduct of the plaintiff in taking his judgment, in order to vitiate the attachment as against subsequent attaching creditors. Felton v. Wadsworth, 7 Cush. (Mass.) 587; Hathaway v. Hemingway, 20 Conn. 191. And if, in the absence of any fraudulent intent on the part of the parties to the suit, judgment is taken for a larger sum than ought to have been included in the note

sued upon, it has been held that, as against subsequent attaching creditors, the judgment was divisible.

Judge Colt, in Cutler v. Lang, 30 Fed. 173 (Circuit Court, District of New Hampshire), after reviewing the authorities, particularly Felton v. Wadsworth (Mass.) 7 Cush. 587, says:

"The question seems to be one of fraudulent or improper intent."

In the present case there is no evidence of active fraud on the part of the appellant in seeking its amendment in the municipal court. There were then no persons apparently interested except the plaintiff and defendant—creditor and debtor. It was competent for them to make agreements and amendments. An enlargement of the plaintiff's cause of action constituted no fraud or wrongful act, of which either party to the record could avail himself after the amendment was allowed. There is nothing in the record that calls for an application of the principle that "fraud corrupts and destroys the whole," as was the case in Fairfield v. Baldwin, 12 Pick. (Mass.) 388, and Peirce v. Partridge, 3 Metc. (Mass.) 44.

Upon principles of equity there appears no reason why we should not hold the appellant's lien valid upon the funds in the hands of Houghton-Mifflin Company to the extent of $250 interest and costs, even though it be held that the trustee in bankruptcy is "a person" not concluded by the allowance of the amendment, within the meaning of G. L. Mass. c. 231, § 138, supra. But it seems to us that there is a further reason for the conclusions that we have reached.

Under the statute, four classes of persons are not bound by the allowance of an amendment unless upon notice and an opportunity to be heard, viz. "subsequent attaching *creditor* or *purchaser* of property attached or *bail* or any *person* other than the parties to the record."

Attaching creditors are such as attach the same property between the date of the first attachment and the allowance of the amendment.

Purchasers of the property attached are such as acquire their interest within the same period of time. Who is a "person other than the parties to the record" may best be determined by adverting to the reason for the rule or statute. It has been aptly stated as follows:

"The ground upon which bail is discharged, or an attachment is dissolved, as against a subsequent attaching creditor, by reason of any alteration or amendment of the process, is the injury resulting to the vested rights of such parties."

When the reason for the rule is considered, it is apparent that a "person other than parties to the record" is one who has acquired a vested interest subsequent to the attachment and prior to the amendment. One who attempts to acquire an interest subsequent to the allowance of an amendment obtains no equities in the property superior to the rights of the defendant.

No case has been called to our attention, and we have been able to discover none, wherein a party asserting an interest subsequent to an amendment has been permitted to avail himself of the statute. Freeman v. Creech, 112 Mass. 180 (1873), in which are cited the early cases of Hill v. Hunnewell, 1 Pick. (Mass.) 192, Willis v. Crooker, 1

Pick. (Mass.) 204, 206, note, and Wood v. Denny, 7 Gray (Mass.) 540, 542, has since been cited in Prince v. Clark, 127 Mass. 599, 601; Marble v. Jamesville Mfg. Co., 163 Mass. 171, 178, 39 N. E. 998, and Driscoll v. Holt, 170 Mass. 262, 49 N. E. 309; but in none of these cases did the third parties' rights accrue subsequent to the amendment.

At the time of the allowance of the amendment in question in the instant case, the trustee in bankruptcy had acquired no vested interest, like that of an attaching creditor, in the money attached in the second suit, as his rights did not arise or relate back to a date earlier than the filing of the petition in bankruptcy, which was long subsequent to the allowance of the amendment. Bailey v. Ice Machine Co., 239 U. S. 268, 274, 275, 36 Sup. Ct. 50, 60 L. Ed. 275.

Upon the facts as they appear, the trustee in bankruptcy is not a creditor, purchaser, bail, or other person, within the meaning of the statute, and *cannot avail* himself of it to recover the entire sum disclosed by Houghton-Mifflin Company and paid to the appellant. Appellant's attachment, to the extent of its debt and costs first declared on in the municipal court, having been made more than four months prior to bankruptcy, had matured as against the trustee in bankruptcy, and to that extent payment to the appellant was legal. This is so upon equitable grounds, as well as upon a fair construction of the Massachusetts statute.

Nothing more than a nominal judgment was obtained in the municipal court. No execution was ever issued against the funds in the hands of the trustee, but the discharge of Houghton-Mifflin Company from further liability as trustee was a valid consideration for the payment of so much of the money in its hands as would satisfy the valid lien of $250 interest and costs.

[5] The remaining question relates to the balance of the money paid appellant by Houghton-Mifflin Company. Appellant claims to hold it under a lien by virtue of the attachments of June 11, 1920, and the amendment of its specifications allowed October 4, 1920. By the original attachment the lien for $250, plus interest and costs, was acquired. If any lien on the balance was acquired, it must have been by the allowance of the amendment, which was within four months of the petition in bankruptcy.

The rights conferred on a trustee in bankruptcy are not those of a subsequent attaching creditor or purchaser. Neither does he derive his rights through or under the bankrupt. His are rights arising by force of the Bankruptcy Act independent of any existing right in the bankrupt. His rights are acquired by virtue of the Bankruptcy Act, and not under the Massachusetts statute.

While it is true, as a general rule, that amendments allowed by the court relate back to the commencement of the action, this is not universally true. Assuming that the court had a right to allow the amendment, it created a valid lien upon the funds in the hands of the trustee under the Massachusetts statute. But neither the courts, the state statute, nor the parties by agreement could within the four months period, create a valid lien upon the property of the bankrupt for a preexisting debt. Bankruptcy Act, § 66b (Comp. St. § 9644), provides

that judgments suffered by the bankrupt to be filed against him within the four months period, if they operate as a preference, are voidable by the trustee. Bankruptcy Act, § 67f (Comp. St. § 9651), provides:

"That all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt. * * '* "

We see no reason why the judgment of the state court allowing an amendment that increased the appellant's lien should be treated as of any higher validity than a judgment suffered by the bankrupt for the amount of the creditor's claim which would be declared invalid under the provisions of the act. The effect of allowing the amendment was to increase the size of the appellant's lien and create a preference by just so much as the lien was enlarged. This was in contravention of bankruptcy laws, and cannot be permitted to prevail, even though such action was permissible in the state court. See Metcalf v. Barker, 187 U. S. 165, 174, 23 Sup. Ct. 67, 47 L. Ed. 122.

The trustee in bankruptcy is entitled to recover of the appellant the following items, the receipt of which by it were preferential:

| | |
|---|---|
| National Grand Bank payment | $ 48.68 |
| Citizens National Bank payment | 140.20 |
| Houghton-Mifflin Company ($804.90—$274.83) | 530.07 |
| | $718.95 |

The decree of the District Court is vacated, and a decree is directed to be entered for the appellee for $718.95, with interest from the date of the bill of complaint, with costs in this court to the appellant.